

FILED & ENTERED

DEC 06 2016

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY Fisher   DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re:<br><br>Krikor Tatoyan<br><br><br>Debtor(s). | CHAPTER 7<br><br>Case No.: 1:10-bk-18698-MT<br>Adv No:   1:10-ap-01372-MT |
| Irena Zabrodnaya<br><br>Plaintiff(s),<br>v.<br><br>Krikor Tatoyan<br><br><br>Defendant(s). | **MEMORANDUM OF DECISION AFTER SUBMITTED TRIAL** |

    On July 16, 2010, Krikor Tatoyan ("Debtor" or "Defendant") filed a voluntary chapter 7 bankruptcy case. At the time the case was filed, Debtor was a defendant in a state court proceeding initiated by Irena Zabrodnaya ("Plaintiff"). Plaintiff obtained a money judgment against Defendant in the state court case.  She was attempting to enforce the judgment at the time Defendant filed the bankruptcy. In relation to enforcing her judgment, Plaintiff had taken a judgment debtor examination of Defendant, in which he testified under oath and produced documents regarding the nature, extent and location of his assets and liabilities.

    Between July 16, 2010 and July 23, 2010, Defendant filed his schedules and other case commencement documents (the "Original Schedules").  On August 13, 2010, Defendant filed amended schedules B and C, reducing the value of some personal

-1-

property listed in the Original Schedules and shifting various exemptions (bankr. doc. 18-19). Four days later, on August 17, 2010, Debtor amended Schedule C again (collectively with the Aug. 13 schedules, the "Amended Schedules"). The Statement of Financial Affairs ("Original SoFA"), filed as part of the Original Schedules, was not amended in 2010.

On August 31, 2010, Plaintiff filed this adversary proceeding objecting to discharge pursuant to 11 U.S.C. §§ 727(a)(2), (3), (4) and (5). The basis for the adversary complaint is that Defendant's testimony and produced documents in relation to his judgment debtor examination in the state court proceeding differs from the sworn statements made by Defendant in his petition, schedules and statement of financial affairs filed in his bankruptcy case. On December 6, 2010, after the original complaint had been dismissed on motion by Defendant, Plaintiff filed her first amended complaint (the "FAC"). On March 8, 2011, after having a second motion to dismiss denied, Defendant filed his answer to the FAC.

On February 26, 2015, the parties filed their Joint Pretrial Stipulation, which was signed by both parties, ad. doc. no. 95. The parties' attorneys then filed dueling declarations accusing the other of not complying with the pretrial procedures under the Local Bankruptcy Rules. Nevertheless, on April 6, 2015, Plaintiff filed her amended exhibit list and amended witness list. On April 23, 2015, Defendant's counsel filed a declaration, stating: (1) the Defendant has no further exhibits to offer other than those listed by Plaintiff; (2) the Defendant has no other witnesses to offer other than those listed by Plaintiff; (3) the Defendant reserves the right to present evidence and witnesses, not now known, after Plaintiff's presentation of the case; and (4) the Defendant is now ready for trial. <u>Decl. of Richard M. Moneymaker re Pre-Trial Order</u>, ECF adversary doc. 106.

On May 6, 2015, the Court held a pretrial conference for this adversary proceeding. At the pretrial conference, the Court adopted Plaintiff's proposed pretrial stipulation. The Court admonished Defendant, explaining that Defendant could not just "reserve the right" to present evidence and witnesses until after Plaintiff's presentation of the case.

On July 20, 2015, Dapeer appeared on behalf of Plaintiff, and no appearance was made on behalf of Defendant. Dapeer informed the Court that Defendant's counsel had agreed to have him appear and explain that the parties were going to submit the trial on the papers to the Court, and informed the Court that the parties would be submitting to a stipulated briefing schedule. After the briefing schedule was complete, the trial would be under submission. The stipulation for the submitted trial was filed by the parties on July 24, 2015 (the "Trial Stipulation"). The Trial Stipulation provided for Plaintiff to file and serve her memorandum of points and authorities, trial brief, and citations to the exhibits on or before August 20, 2015. Defendant was to file and serve his memorandum of points and authorities, trial brief, and citations to the exhibits in support of his rebuttal case on or before September 21, 2015. Plaintiff was to file and serve her memorandum of points and authorities, trial brief, and citations to the exhibits in support of her reply on or before October 5, 2015.

On September 21, 2015, as required under the Trial Stipulation, Defendant filed his Trial Brief, and also filed amended Schedules B, D, and H, and an amended Statement of Financial Affairs (collectively, the "Post-Complaint Amended Schedules") in his bankruptcy case. Defendant also, however, filed a Motion to Amend the Joint Pretrial Order to Add Two Exhibits of Defendant (the "Motion to Amend"), one month after having received service of Plaintiff's Trial Brief. Ad. ECF doc. 109. In support of the Motion to Amend, Defendant argued that "he was unaware [that] the Plaintiff intended to argue that he concealed evidence and facts from the Trustee." Defendant sought to include a Marital Property Agreement that was described in Original SoFA, and his Answer to the First Set of Interrogatories that was dated July 13, 2011. After taking oral argument on the Motion to Amend, the Court entered an order denying it, and a separate Notice of Tentative Ruling, explaining the Court's reasoning. ECF ad. doc. 118 and 125. Defendant moved to reconsider the ruling on the Motion to Amend.

On December 14, 2015, the Court entered an order granting in part, denying in part, Defendant's Motion for Reconsideration. ECF ad. doc. 136. The Court ruled that it would consider and take judicial notice of the Post-Complaint Amended Schedules filed by Defendant for purposes of the trial of the adversary case. The Court permitted, however, Plaintiff to argue in her reply brief what weight, if any, the Court should give to the Post-Complaint (and post-Pretrial Order) Amended Schedules and that the Court would consider the Original Schedules and Original SoFA filed by Debtor that were the basis for Plaintiff's complaint objecting to discharge. As a condition to the granting of reconsideration and to compensate Plaintiff for the delay and additional briefing caused by Defendant, the Court ordered that Plaintiff shall be paid as monetary sanctions $2,485.00 by Debtor, Debtor's counsel or both. Defendant's request to submit an additional brief other than the brief that defendant has already filed in this matter was denied.

In her trial brief, Plaintiff argues that the discrepancies between what Debtor testified to in his extensive judgment debtor exams ("JDEs") and the schedules he filed for his bankruptcy nine months later demonstrate that he intentionally omitted information and assets in an attempt to procure a discharge through fraud. Defendant, for his part, argues that his financial circumstances during 2009 were different than on the date he filed bankruptcy in July 2010. Defendant contends that he answered questions in the JDEs and his schedules to the best of his ability as a lay person with no familiarity with legal terms.

## I. DENIAL OF DISCHARGE UNDER § 727(a)

In general, the bankruptcy court must grant a discharge to an individual chapter 7 debtor unless one of the twelve enumerated grounds in § 727(a) is satisfied. In the spirit of the "fresh start" principles that the Bankruptcy Code embodies, claims for denial of discharge are liberally construed in favor of the debtor and against the objector to discharge. Khalil v. Developers Sur. & Indem. Co. (In re Khalil), 379 B.R. 163, 172 (B.A.P. 9th Cir. 2007) aff'd, 578 F.3d 1167 (9th Cir. 2009). The objector to discharge, thus, bears the burden to prove by a preponderance of the evidence that the debtor's discharge should be denied under an enumerated ground of § 727(a). Id.

Various subsections of § 727(a) require a specific state of mind. The "knowing and fraudulent" intent standard of § 727(a)(4) means that Debtor must have actual (not constructive) intent in concealing records or making an omission in schedules. In re Wills, 243 B.R. 58, 64 (9th Cir. BAP 1999). Fraudulent intent may be proved by circumstantial evidence, and reckless disregard combined with other circumstances may support an inference of fraudulent intent. Matter of Sholdra, 249 F.3d 380, 382 (5th Cir. 2001); In re Khalil, 379 B.R. 163, 174 (9th Cir. BAP 2007); Retz, 606 F.3d at 1199; Stamat v. Neary, 635 F.3d 974, 982 (7th Cir. 2011) (reckless disregard shown where debtors who failed to disclose business interests were highly educated and had significant business experience). Intent can be established by consideration of the totality of circumstances. In re Devers, 759 F.2d 751, 753–54 (9th Cir. 1985). The necessary intent under § 727(a)(2) "may be established by circumstantial evidence, or by inferences drawn from a course of conduct." In re Adeeb, 787 F.2d 1339, 1343 (9th Cir.1986) (quoting Devers, 759 F.2d at 753–54)).

Sections 727(a)(3) and (5) do not have an intent or state of mind requirement. Denial of discharge under these provisions only requires the debtor to act. In re Scott, 172 F.3d 959, 969 (7th Cir. 1999); Cox, 904 F.2d at 1401 (quoting Burchett v. Myers, 202 F.2d 920, 926 (9th Cir.1953)).

**a)    § 727(a)(3) - Failure to Keep or Preserve Records:**

Section 727(a)(3) provides for denial of a debtor's discharge if the debtor "has concealed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure was justified under all of the circumstances of the case." 11 U.S.C. § 727(a)(3).

To establish a prima facie case, the Plaintiff must show that the Debtor (1) failed to maintain and preserve adequate records; and that (2) such failure makes it impossible to ascertain their financial condition and material business transactions. In re Cox, 41 F.3d 1294, 1296 (9th Cir.1994). Once the Plaintiff establishes a prima facie violation of § 727(a), the burden shifts to the Debtors to show that their lack of records was justified under the circumstances and to provide a satisfactory explanation for their dissipation of the assets. In re Caneva, 550 F.3d, 755 (9th Cir.2008).

The [debtor] must present sufficient written evidence which will enable his creditors reasonably to ascertain his present financial condition and to follow his business transactions for a reasonable period in the past. In re Cox, 904 F.2d 1399, 1400 (9th Cir. 1990). In some cases, a failure to produce proper records will not justify a denial of discharge when the missing information can be reconstructed from records kept by others. See Collier on Bankruptcy, ¶ 727.03 (Alan N. Resnick & Henry J. Sommer eds., 16th ed).

After showing inadequate or nonexistent records, "the burden of proof then shifts to the debtor to justify the inadequacy or nonexistence of the records." In re Cox, 41 F.3d 1294 at 1296 (citations omitted). To determine whether the failure was justified under the circumstances, the court should consider, among other factors it deems

-4-

relevant, (1) [Debtor]'s intelligence and educational background; (2) experience in business matters; (3) the extent of involvement in the businesses for which discharge is sought; (4) [Debtors] reliance [including her knowledge of whether records were being kept]; (5) the nature of the marital relationship; and (6) any recordkeeping or inquiry duties imposed upon [Debtor] by state law. In re Cox, 904 F.2d at 1403, n.5.

Plaintiff argues that Defendant's failure to maintain and make available adequate books, records, and accounts of concerning the financial condition of Tarzana Surgery Center ("TSC"), his failure to produce more than "minimal" bank account records for limited partnerships in which he has an interest during the course of his JDEs, are indicative of Defendant's consistent failure to maintain financial records for his dealings. Plaintiff contends that Exhibits E-5 and E-4 show the transfer of "substantial sums of money" but Debtor refused to produce any personal tax returns (asserting tax payer privilege) or comprehensive bank account statements for the various entities his family controls. Plaintiff has also shown that Debtor holds interests in eight limited liability companies or limited partnerships, either individually or beneficially, none of which were disclosed Original Schedules[1]. Although Debtor produced at his judgment debtor examination Schedule K-1 statements for some of the Tatoyan Entities, such documents were only for years 2007 and 2008 without any explanation as to why the K-1 statements could not be produced or were not available for tax year 2009.

Plaintiff also points out that Debtor failed to produce any books, records and accounts pertaining to KBT FLP, a Nevada limited partnership, and the only reference to that entity during the course of the judgment debtor examination and in the exhibits to the examination is the reference in Exhibit F-21, page 465. Plaintiff argues that the chapter 7 trustee and creditors were not informed about that limited partnership, the property, income and expenses attributable to the property, losses attributable to the property and transfers by the debtors to or for their benefit, individually or beneficially, of any interest in that property. Without this information, which Plaintiff argues was deliberately withheld, it was not possible for creditors and trustee to ascertain the debtor's financial condition and material business transactions.

Plaintiff has sustained her burden, providing evidence that Defendant maintained inadequate and/or nonexistent records, which made it impossible to ascertain his financial condition and material business transactions. As such, the burden of proof then shifts to Defendant to justify the inadequacy or nonexistence of the records.

Debtor does not dispute Plaintiff's factual allegations as to his lack of financial records. In fact, Debtor did not submit a declaration in support of his position at trial.[2] In his trial brief, Defendant argues that he is a lay person with no familiarity with the legal terms used, and did his best to answer what was asked. Defendant's Trial Brief, 2:12-13, ad. ECF doc. no. 111. Defendant's only explanation of his failure keep or to produce records for TSC and the Tatoyan entities is that his daughter Marie, then 26

---

[1] The identified entities in which Debtor has an interest, or are controlled by Debtor and his family, include but are not limited to OKT FLP (Plaintiff's Ex. E-9); Krikor B. Tatoyan, MD, Inc. (Plaintiff's Ex. E-1 – E-3); Krikor, Inc. (Plaintiff's Ex. E-8); KCM FLP (Plaintiff's Ex. E-7; F-21); Tatoyan Family Trust; Tarzana Surgery Center (Plaintiff's Ex. C-3; E-4; and G-3) (referred to collectively as the "Tatoyan Entities").

[2] Any arguments or explanations attributed to Debtor are taken from his Trial Brief (ad. ECF doc. 111, Sept. 21, 2015), and Debtor's Declaration ISO Motion to Dismiss (ad. ECF doc. 9, Oct. 5, 2010).

years old, was his bookkeeper and was prevented from assisting him locate and explain documents during his JDEs. Decl. of Krikor Tatoyan ISO Motion to Dismiss Complaint under 12(b) (the Tatoyan Decl.), 2:13-23, ad. ECF doc. no. 9.

In his JDEs, Debtor repeatedly testified that he was unable to get the various documents requested by Plaintiff because they were in the control or possession of his various agents. Defendant was unable to produce bank records for Tarzana Surgery Center, an entity in which Defendant is a 51 percent owner, because the new CEO deals with the "day-to-day operations." Plaintiff's Trial Exhibits, Ex. A, 11:6-14-11. When pressed, Defendant admitted that he spoke "two or three" times with the new CEO, Dr. Mikhail, about his need to produce TSC's bank statements. When told by Dr. Mikhail that he did not need to produce the bank statements for TSC[3], Debtor spoke with Dr. Mikhail for no more than a few minutes in an attempt to obtain those records.

In several instances in the JDEs, Debtor explained that his financial statements detailing his earnings from his medical practice and the Tatoyan Entities were sent to his accountant. Id. at 15:2; 16:2-17:1; 20:7-9; 24:11-22; 25:11-18; Id. at Ex. B, 54:6-22; Id. at Ex. C, 95:7-15; 96:25-97:10; Id. at Ex. E, 174:3-22; 215:13.23. When asked why he could not get copies of the requested documents from his accountant, Debtor replied, "I just didn't have enough time." Id. When Plaintiff's counsel asked when Defendant last spoke with his accountant and asked for his accountant's phone number, Debtor feigned ignorance, claiming that he had not spoken with the accountant in two or three months, and that he did not have the phone number because he changed phones. Id.

Debtor gave similar, noncommittal responses when asked for other documents during his JDEs. He was unable to produce a copy of the partnership agreement for TSC because "the CEO [Dr. Mikhail] has it" Id., Ex. A, 17-18. When probed about his lack of compliance with the document production for the JDEs, Defendant's almost rote response is that "there was so much requested" and "my accountant has it" or that his daughter pays the bills and "she has been keeping the records." Id., Ex. A, 22:12-24:22.

Defendant stated that OKT FLP and KCM FLP owned interest in other LLC entities that owned real properties. Id. Ex. E, 223:7-224:14. When asked if he had the paperwork that reflected how OKT and KCM had acquired their interest in the other LLCs, Defendant replied, "I don't have those." Id., Ex. E, 225:13-16.

Defendant's explanations for his inability to produce records for the funding and asset holdings of the various business entities Defendant controls are not sufficient to meet his burden to justify the inadequacy or nonexistence of the records. Defendant maintains that he has an "imperfect knowledge of American law and property rights" and is a "lay person with no familiarity with the legal terms used." Defendant's Trial Brief, 2:1-2; 2:12-13. This characterization does not comport with Defendant's apparent business savvy. Defendant is a surgeon whose property interests are arranged in a complex system of holdings in various family limited partnerships ("FLPs"), which in turn hold assets in numerous "pass though" LLCs and corporations. Id., Ex. E, 191:14-

---

[3] Debtor quoted Dr. Mikhail, "Our entity is a completely separate entity. The lawsuit is not on this entity. Let them speak with me." Plaintiff's Trial Exhibits, Ex. A, 13:11-13.

192:13. Defendant's sophisticated organization of holding entities, all controlled by his family, was designed to mitigate tax obligations and protect the assets. Id., Ex. F, 149:7-24; 143:13-23. Defendant and his wife, as well as their children, are general partners in the FLPs. Defendant and his wife also held, at various times, officer and/or director positions in TSC. Id., Ex. E, 172:3; 173:16-23; 175:7-22.

It is simply not credible that Defendant, who orchestrated a complex web of financial dealings, was unable to obtain the voluminous records for the numerous entities that hold and shelter his assets. See Caneva v. Sun Communities Operating Limited Partnership (In re Caneva), 550 F.3d 755 (9th Cir. 2008)(holding that when a debtor owns and controls numerous business entities and engages in substantial financial transactions, the complete absence of recorded information related to those entities and transactions establishes a *prima facie* violation of § 727(a)(3)). It is far more likely that Defendant's exhortations of ignorance about how and why his entire financial life had been structured in such a complex fashion was an attempt to protect his assets from judgment creditors like Plaintiff. For instance, Defendant's claim that he had not spoken with his accountant in the two to three months before his JDEs demonstrates that he either did not expend sufficient effort to marshal his financial records for proper disclosure, or he was being purposefully obtuse in an effort to shield his assets from Plaintiff. Further, the JDEs were taken in six sessions over a two month period. If Defendant had taken his duty to marshal and present all the records that should have been maintained for proper tax and income reporting purposes seriously, there is no reason he could not have obtained this information between sessions.

The only conclusion that can be drawn from this record is that Defendant sought to discharge his debt to Plaintiff while obfuscating, concealing and hindering access to any records which would show whether he had any assets to pay his debts. Plaintiff has presented evidence that Defendant failed to maintain and preserve adequate records. Defendant's inability (or unwillingness) to produce records made it impossible for Plaintiff to determine what assets the Tatoyan entities held or may still hold, what assets passed through them and where they may have gone, and what (if anything) is the present value of these assets. In re Caneva, 550 F.3d, 755 (9th Cir. 2008). Defendant's explanations about why his records are either inadequate or nonexistent are not credible, and are insufficient to satisfy his burden.

**b)** **Section 727(a)(4)**

This section, in relevant part, states that a debtor may not be granted a discharge if:

(4) the debtor knowingly and fraudulently, in or in connection with the case--

    (A) made a false oath or account; Or
    …
    (D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs.

11 U.S.C. §727(a)(4).

The purpose of § 727(a)(4) is to ensure that a debtor provides reliable information so interested parties do not have to dig out the facts in examination or investigations. Hansen v. Moore (In re Hansen), 368 B.R. 868, 872 (U.S. 2007) [I]intent under § 727(a)(4) may be established by circumstantial evidence, or by inferences drawn from a course of conduct. Id.  The preponderance standard governs determinations under 11 U.S.C. § 727(a)(4).  See Grogan v. Gardner, 498 U.S. 279, 289 (1991).

**1. Section 727(a)(4)(A) - False Oath or Account:**

The fundamental purpose of § 727(a)(4)(A) is to insure that the trustee and creditors have accurate information without having to conduct costly investigations. In re Wills, 243 B.R. 58, 63 (B.A.P. 9th Cir. 1999). To bring a successful objection to a Chapter 7 discharge on grounds of false oath, a plaintiff must show, by a preponderance of the evidence, that (1) the debtor made a false oath in connection with the case; (2) the oath related to a material fact; (3) the oath was made knowingly; and (4) the oath was made fraudulently. In re Retz, 606 F.3d 1189 (9th Cir. 2010).

Section 727(a)(4)(A) requires that the relevant false oath relate to a material fact. Id. (citing *In re Roberts,* 331 B.R. at 882). "A fact is material 'if it bears a relationship to the debtor's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of the debtor's property'." Id., (citing *In re Khalil,* 379 B.R. at 173). An omission or misstatement that "detrimentally affects administration of the estate" is material. Id. at 1198 (citations omitted).

A false oath is complete when made. In re Searles, 317 B.R. 368, 377 (B.A.P. 9th Cir. 2004) aff'd, 212 F. App'x 589 (9th Cir. 2006). Where the offending oath is contained in the schedules or required statements, the debtor's continuing duty to assure the accuracy of such schedules and statements means that the proper method of correction is a formal amendment of the schedules. *Id.* Moreover, failing to rectify inconsistencies and omissions when filing amended schedules may be weighed in favor of finding the requisite intent to deceive.  AutoSource Capital, Inc. v. Traina (In re Traina), 501 B.R. 379, 382 (U.S. 2013).

A debtor acts knowingly if he or she acts deliberately and consciously. Retz v. Samson (In re Retz), 606 F.3d 1189, 1193 (9th Cir. 2010). A false statement resulting from ignorance or carelessness is not one that is knowing and fraudulent. See Collier on Bankruptcy, ¶ 727.04 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).To demonstrate fraudulent intent, a party must show that: (1) the debtor made the representations (a false statement or omission in bankruptcy schedules); (2) at the time he or she knew they were false; and (3) he or she made them with the intention and purpose of deceiving the creditors. *Id.*

//

//

The first element that must be proven to deny discharge under § 727(a)(4)(A) is the existence of a false oath in connection with the bankruptcy case. <u>Roberts v. Erhard (In re Roberts)</u>, 331 B.R. 876, 882 (B.A.P. 9th Cir. 2005); see also 11 U.S.C. § 727(a)(4)(A).  Here, the errors and omissions in the original schedules are voluminous, and are detailed below.

1. <u>Schedule A</u>

In Schedule A, Debtor did not disclose that he is married or whether he, his wife, both or the marital community owns the two parcels of real property otherwise identified in Schedule A.  See Exhibit H, page 816, or the assets listed in Schedule B, as amended.  See Exhibit H, 11    pages 890-895.

2. <u>Schedule B</u>

In Schedule B and amended Schedule B, at Item 13, being stock and interests in incorporated and unincorporated businesses, Debtor did not list his ownership interest in Krikor B. Tatoyan, M.D., Inc. a California professional medical corporation, and Krikor, Inc., a Nevada corporation, and he failed to identify whether his wife or his community estate holds an interest in that professional medical corporation or any of the other entities he claimed he owned in his examination testimony.  See Exhibit H, pages 817-819 and 890-895.

In Schedule B and amended Schedule B, at Item 13, being stock and interests in incorporated and unincorporated businesses, Debtor did not disclose his ownership interest, his wife's ownership interest, his family's ownership interest and the community estate ownership interest in KCM FLP, OKT FLP, and KBT FLP, being Nevada limited partnerships that hold interest in real estate investments by and through the undisclosed entity Krikor, Inc., a Nevada corporation and the Tatoyan Family Trust dated June 3, 2004.  The existence of these entities was testified to by Defendant in his JDEs. Defendant did, however, disclose that he had an interest in a "Family Limited Partnership" in Schedule B, at Item 14, he did not disclose that there was more than one FLP in which he had an interest. And while Debtor ascribed no value to those partnership interests, the corporation,  or the trust, he nevertheless testified during the course of his JDEs that he received passive investment income from the real estate investments owned by those entities.  See Ex. A, p. 22-30; H, p. 817-819; 891-895.

In Schedule B and amended Schedule B, at Item 13, being stock and interests in incorporated and unincorporated businesses, Debtor fails to disclose his ownership interest in an entity known as Tarzana Surgery Center, Inc., whether or not his wife has an interest in that corporation and whether the ownership interest is a community estate asset. <u>See</u> Exhibit H, pages 5    817-819 and 891-895.

In Schedule B and amended Schedule B, at Item 13, Debtor did not disclose his ownership interest in an entity he identified during the course of his JDEs as Krikor, Inc. Defendant also did not disclose his wife's community property interest in that asset, if any, and whether the asset is a part of his community estate. <u>See</u> Exhibit H, pages 818-819 and 891-895.

-9-

In Schedule B and amended Schedule B, at Item 20, Debtor fails to disclose his ownership interest in a family inter vivos trust the identity of which he disclosed during the course of his JDEs.  Further, Debtor fails to disclose his wife's interest in that trust, if any, and any community estate interest in the trust.

3. Schedule H

In Schedule H, Debtor did not list his wife as a co-debtor.  The instructions to Schedule H require that if Debtor resides or resided in a community property state within the eight year period immediately preceding the commencement of the bankruptcy case, Debtor is required to identify the name of Debtor's spouse and of any former spouse who resides or resided with Debtor in the community property state and include all names used by the non-debtor spouse during the eight years immediately preceding the commencement of the case.  Debtor failed to disclose the fact that he was married, the fact that there was a community property estate, facts which Debtor testified to during the course of his JDEs, both regarding his wife's involvement in the Tarzana Surgery Center, Inc. and the limited partnerships OKT FLP, KCM FLP, KBT FLP, Krikor, Inc. and the Tatoyan Family Trust dated June 3, 2004.  See Id., Exhibit H, page 829.

4. The Original SoFA

At Question 1 of the Original SoFA, Defendant failed to disclose income he received from Krikor B. Tatoyan, M.D., Inc., Tarzana Surgery Center, Inc., and Krikor, Inc., as testified to by Defendant in the JDEs. See Exhibit H, pages 833-841.

At Question 2 of the Original SoFA, Defendant failed to disclose income and distributions received by Defendant and his wife from the Tatoyan Entities and the family inter vivos trust of which Defendant testified to during the course of his JDEs.

At Question 4 of the Original SoFA, Defendant fails to disclose the Los Angeles Superior Court Case No. LC 076326 lawsuit in which Defendant gave a JDE.  Instead, Defendant stated under oath that he was not at the time of filing of his petition or within one year immediately preceding the filing of the bankruptcy case, a party to a lawsuit or administrative proceeding.  Defendant's false statements apply both to Question 4a and 4b of the Original SoFA.

At Question 10 of the Original SoFA, Defendant failed to disclose the transfers of property that Defendant testified in the JDEs as having occurred, as evidenced by the exhibits attached to the transcripts of the JDE proceedings.

At Question 16 of the Original SoFA, Defendant failed to disclose that within eight years immediately preceding the commencement of the case, there was no person who was the Defendant's spouse or former spouse of the Defendant who resides or resided with the Defendant in the community property State of California.

At Question 19c of the Original SoFA, Defendant failed to disclose the identity of the person(s) identified in the Defendant's JDE testimony as controlling and in

possession of the financial books, records and accounts pertaining to the Tarzana Surgery Center, Inc., an asset that was omitted from disclosure in the Defendant's Schedule B and the amended Schedule B.

All of these omissions and misstatements in Defendant's Original Schedules were material. To merit denial of discharge under section 727(a)(4), the false statement or omission must be material. In re Wills, 243 B.R. 58, 62 (B.A.P. 9th Cir. 1999). A false statement or omission is a material fact "if it bears a relationship to the debtor's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of the debtor's property." Id. "A false statement or omission may be material even if it does not cause direct financial prejudice to creditors." Id. at 63. On the other hand, false statements or omissions relating to assets having little value or that would not be property of the estate, may be considered immaterial and not support denial of discharge. Id.

The false answer to Question 16 in the Original SoFA effectively cut-off further investigation by the Chapter 7 Trustee or other creditors regarding the existence of community or separate property assets, the transfer of community or separate property assets, and the liability of the non-filing spouse or former spouse for debts and liabilities scheduled by Defendant as secured and unsecured claims in his bankruptcy case. Whether Defendant's omissions were related to assets having little value or assets that were exempt could not be ascertained because there was no information provided nor records produced that would have shown that the undisclosed entities and the assets they held were of little value to the estate. They were all pieces in the chain of inquiry which would allow creditors and the trustee to determine whether creditors could be paid.

Defendant did not file the Amended SoFA until more than one year after the Trustee filed her final report. See bankr. ECF doc. 56 and 62. By failing to timely correct that error in Question 16, given the involvement of the Defendant's wife in his business and financial affairs as he testified to during the course of the JDEs, and the proximity of the JDEs relative to the time when the Defendant came to file his Chapter 7 petition, leads to the inescapable conclusion and inference that Defendant acted with the intent to defraud creditors and isolate his spouse from investigation and scrutiny of her business and financial affairs by the Chapter 7 Trustee and creditors generally of Defendant's estate. Given the fact that Defendant filed two sets of amended schedules, he certainly had the opportunity as well as the duty to review his filings to make sure that they were complete and accurate. Failing to rectify inconsistencies and omissions when filing amended schedules may be weighed in favor of finding the requisite intent to deceive. AutoSource Capital, Inc. v. Traina (In re Traina), 501 B.R. 379, 382 (U.S. 2013).

This finding is also supported by the timing of the Amended SoFA. Defendant did not file the Amended SoFA until *after* Plaintiff submitted and served her Trial Brief, as required by the Stipulation re Submitted Trial, explaining in detail the evidence she would use to prove her § 727(a) claims. It was only after Defendant learned exactly on which omissions Plaintiff would rest her claims that he disclosed more information in the

-11-

Amended SoFA. In short, Defendant was forced to amend, did not do so completely, and did so years after creditors and the trustee needed the information.

While Defendant argues in his brief (as there is no evidence, declaration or otherwise, to support his argument) that he admittedly did not answer SoFA Question 16 correctly and that the schedules were admittedly deficient, he believes that the filing of the Amended SoFA and Amended Schedules should suffice to show a lack of fraudulent intent. The Court is not persuaded that the amendments correct the fraudulent statements. The considerable delay between the filing of the Original Schedules in July 2010 and their amendment on September 21, 2015 undermines this excuse. Where the amended filings "were done at the debtor's leisure," such tardy amendment falls "well short of the requisite disclosure." See In re Arcuri, 116 B.R. 873, 882 (Bankr.S.D.N.Y. 1990), *abrogated on other grounds* by In re Wolfson, 139 B.R. 279 (Bankr.S.D.N.Y. 1992).

A debtor acts knowingly if he or she acts deliberately and consciously. Retz v. Samson (In re Retz), 606 F.3d 1189, 1193 (9th Cir. 2010). A false statement resulting from ignorance or carelessness is not one that is knowing and fraudulent. See Collier on Bankruptcy, ¶ 727.04 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).To demonstrate fraudulent intent, a party must show that: (1) the debtor made the representations (a false statement or omission in bankruptcy schedules); (2) at the time he or she knew they were false; and (3) he or she made them with the intention and purpose of deceiving the creditors. Id.

As outlined above, Defendant made the false statements and omissions in his schedules and SoFA. The evidence presented shows that the JDEs clued in Defendant as to the information he would need to complete his schedules and satisfy his duty of disclosure. The extensive nature of the JDEs also would have shown Debtor where his information was incomplete, so that he could obtain the information from his various agents to properly prepare his bankruptcy schedules. In the seven months between the JDEs and the filing of his bankruptcy, Debtor had the opportunity to marshal his financial records, to obtain them from the various agents he claimed had them in his JDE (accountant; lawyer; daughter). His failure to obtain those records and properly disclose all the assets he was examined about demonstrates that, at the time he signed his schedules, he knew the information was false as incomplete. Debtor knew his interests in the FLPs, the entities they controlled, and the income stream from those entities was the focus of Plaintiff creditor's examinations. The only inference that can be drawn from this total failure of effort in completing his schedules and SoFA is that Defendant purposefully refrained from disclosing either the existence or the value of these entities and the assets they hold to deceive his creditors and prevent them from reaching these assets.

This inference is bolstered by Defendant's actions as related to the Motion to Amend. The two exhibits that Defendant sought to include in the previously approved Pretrial Stipulation were his answers to the first set of interrogatories, and a copy of the Marital Property Agreement (the "MPA"). The MPA was executed on February 1, 2009, approximately one month before Plaintiff's state court counsel filed a "Motion for Order Charging Judgment Debtor's Partnership Interests." Amended Complaint, Ex. A. The

MPA was executed a mere nine months before the JDEs were conducted by Plaintiff. The Original SoFA was filed on July 16, 2010. While the MPA was disclosed in the Original SoFA, Defendant listed the date of the MPA as "7/16/1977." It is not credible that Defendant mistakenly listed a date thirty-three years in the past for a MPA that he executed the year prior. In fact, on January 13, 2010, Defendant testified at his JDE that he had signed the agreement "last year" after meeting with his lawyer, who represented him in (1) the execution of the MPA, (2) the JDEs; (3) the bankruptcy case; and (4) this adversary proceeding. See Plaintiff's Trial Exhibits, Ex. G, 521:11-524:13. Although Defendant curiously did not invoke the "advice of counsel" defense, even if Debtor's counsel entered a false date for the MPA, Debtor should have corrected this misinformation when he reviewed the SoFA before he authorized it to be signed on his behalf. See Retz v. Samson (In re Retz), 606 F.3d 1189, 1199 (9th Cir. 2010)(holding that the advice of counsel is not a defense when the erroneous information should have been evident to the debtor).

While there is no admissible testimony via declaration from Defendant, his protestations of ignorance about financial and legal terms in his trial brief are far outweighed by the evidence presented by Plaintiff and the reasonable inferences drawn by the Court therefrom.

For the reasons stated above, JUDGMENT is entered in favor of Plaintiff on the § 727(a)(3) and (a)(4)(A). Plaintiff should lodge an appropriate judgment.

###

Date: December 6, 2016

Maureen A. Tighe
United States Bankruptcy Judge